IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATT MIHSEN<br>6207 Suffolk Drive<br>Arlington, Texas 76001<br><br>　　　　　Plaintiff<br><br>　　v.<br><br><br>THE SYRIAN ARAB REPUBLIC,<br>THE ISLAMIC REPUBLIC OF IRAN<br><br><br>　　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)　Civil Action No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiff Assef (Matt) Mihsen ("Mr. Mihsen") brings this action against Defendants The Syrian Arab Republic ("Syria") and The Islamic Republic of Iran ("Iran") as follows:

**INTRODUCTION**

Mr. Mihsen is a U.S. citizen who was illegally and baselessly arrested, tortured and imprisoned on false charges without due process for fifteen years. Officials, employees, and agents of The Syrian Arab Republic ("Syria") and The Islamic Republic of Iran ("Iran"), jointly and acting within the scope of their office, employment, or agency, repeatedly abused and tortured Mr. Mihsen, deprived him of his freedom, and threatened his life, and intentionally inflicted permanent physical injuries and emotional distress. Mr. Mihsen brings this action under the Foreign Sovereign Immunities Act's "state sponsor of terrorism" exception to immunity, 28 U.S.C. § 1605A, and seeks compensatory damages for assault and battery, intentional infliction of emotional distress, and false imprisonment related to Syria's and Iran's acts of torture. Mr. Mihsen also seeks punitive damages.

## PARTIES

1. Mr. Mihsen is a 67-year-old U.S. citizen. He was born in Syria and resides in Arlington, Texas.

2. Defendant Syria is a U.S. State Department designated state sponsor of terrorism and has been since December 29, 1979. *See* Revision of Foreign Policy Controls on Exports to Syria, Iraq, Libya, and the People's Democratic Republic of Yemen, 45 Fed. Reg. 33,950, 33,956 (May 21, 1980) (codified 15 C.F.R. Part 385); State Sponsors of Terrorism, U.S. Dep't of State Bureau of Counterterrorism, https://www.state.gov/state-sponsors-of-terrorism/ (May 15, 2025); *Sotloff v. Syrian Arab Republic*, No. 16-725 (TJK), 2021 U.S. Dist. LEXIS 47625 at *19 (D.D.C. Mar. 15, 2021); *see also* Anti-terrorism: Syria, 15 C.F.R. § 742.9(a)(2) (2013) ("The Secretary of State has designated Syria as a country whose government has repeatedly provided support for acts of international terrorism."). Syria's ongoing status as a sponsor of terrorism was noted in 2004, 69 Fed. Reg. 28,098–28,100 (May 18, 2004), and again in 2005, 31 C.F.R. § 596.201 (2005). The designation was in place both at the time of the events that gave rise to the issues in this Complaint and at the time this Complaint was filed.

3. Defendant Iran is a U.S. State Department designated state sponsor of terrorism and has been since January 19, 1984. *See State Sponsors of Terrorism*, U.S. Dep't of State Bureau of Counterterrorism, https://www.state.gov/state-sponsors-of-terrorism/ (last visited May 13, 2025). The designation was in place both at the time of the events that gave rise to the issues in this Complaint and at the time this Complaint was filed.[1]

---

[1] Exhibit A to this Complaint is a time-stamped image of the list of State Sponsors of terrorism at the time of the filing of this Complaint. State Sponsors of Terrorism, U.S. Dep't of State Bureau of Counterterrorism, https://www.state.gov/state-sponsors-of-terrorism/ (May 13, 2025).

4. During the time period at issue in this Complaint, up to and until at least the end of 2024, Iran and Syria were close strategic allies, and Iran provided significant support for the Syrian regime, including the provision of agents and officers who supported the Syrian regime during the Syrian civil war. The State Department has determined that "foreign military or paramilitary organizations operat[e] in [Syria], including proregime forces such as . . . Iran-affiliated Hizballah, and Iran's Islamic Revolutionary Guard Corps, members of which [] committed numerous abuses." Dep't of State, Bureau of Democracy, H.R. and Lab., 2021 Country Reports on Human Rights Practices: Syria (2021).

5. Iran likewise has a long history of providing material resources, training, and support to Syria's Military and security services in programs related to interrogation and torture. *See* Nat. Council of Resistance of Iran, *Iran News: Syria TV Exposes Files Revealing Iran's Infiltration in Syrian Security Forces and Use of Torture* (Dec. 29, 2024), https://www.ncr-iran.org/en/news/terrorism-a-fundamentalism/iran-news-syria-tv-exposes-files-revealing-irans-infiltration-in-syrian-security-forces-and-use-of-torture/; IFMAT, *Syrians tell of torture, rape, detention at hands of IRGC and Hizbullah* (Jun. 30, 2022), https://www.ifmat.org/06/30/syrians-tell-torture-rape-detention-hands-irgc-hizbullah/; North Press Agency, *Iran's secret torture prisons in Syria, uncovered* (May 13, 2023), https://npasyria.com/en/94677/. Consistent with these reports, the State Department has cited "credible reports that [Iranian] security forces and prison personnel tortured and abused detainees and prisoners," and further reports that Iran "materially contributed to human rights abuses in Syria." Dep't of State, Bureau of Democracy, H.R. and Lab., 2017 Country Reports on Human Rights Practices: Iran (2017).

6. Those reports are supported by Iran's documented use of torture in Syria in coordination with Syrian security services. *See* Nat. Council of Resistance of Iran, *Iran News: Syria TV Exposes*

*Files Revealing Iran's Infiltration in Syrian Security Forces and Use of Torture* (Dec. 29, 2024), https://www.ncr-iran.org/en/news/terrorism-a-fundamentalism/iran-news-syria-tv-exposes-files-revealing-irans-infiltration-in-syrian-security-forces-and-use-of-torture/; IFMAT, *Syrians tell of torture, rape, detention at hands of IRGC and Hizbullah* (Jun. 30, 2022), https://www.ifmat.org/06/30/syrians-tell-torture-rape-detention-hands-irgc-hizbullah/; North Press Agency, *Iran's secret torture prisons in Syria, uncovered* (May 13, 2023), https://npasyria.com/en/94677/.

## JURIDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's action and personal jurisdiction over Defendants pursuant to 28 U.S.C. §§ 1330 and 1605A, which provide for jurisdiction over all civil actions for personal injury of a national of the United States caused by acts of torture carried out by state sponsors of terrorism and their officials, employees, and agents.

8. Defendants have a reasonable opportunity to arbitrate the claims in this action as required under 28 U.S.C. § 1605(a)(2)(iii). Plaintiff's offer to arbitrate is in accordance with accepted international rules of arbitration contemporaneous with this Complaint.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(f)(4).

## FACTUAL ALLEGATIONS

### A. Background And Initial Detention

10. Mr. Mihsen is a dual citizen of the United States and Syria.

11. In 2009, Mr. Mihsen traveled to Tartus, Syria to visit his mother.

12. Upon his arrival in Damascus, Syria, Mr. Mihsen was detained and questioned by Syrian officials about why he was traveling to Syria. Those officials then forced him to meet with Syrian Military Intelligence for further interrogation.

13. After aggressively interrogating Mr. Mihsen about his entry into Syria, Syrian Military Intelligence arrested him.  For approximately the next three years, until 2012, Mr. Mihsen was held in Tartus without any charges against him or due process.  During this period, he was prevented from traveling freely and prohibited from communicating with the U.S. embassy or with anyone in the United States.

14. Every few months from 2009-2012, Mr. Mihsen was forcibly transferred for extended interrogations at Syrian Military Intelligence Headquarters in Damascus and at a Syrian Military Intelligence office in Tartus.  These protracted interrogation sessions continued for months at a time.

15. Prisons operated by Syrian Military Intelligence are known internationally for brutality and torture.  On July 28, 2021, the U.S. Department of Treasury's Office of Foreign Assets Control sanctioned eight Syrian prisons for human rights abuses against political prisoners and other detainees.  *See* Press Release, U.S. Dep't of Treas., Treasury Sanctions Syrian Regime Prisons, Officials, and Syrian Armed Group (July 28, 2021), https://home.treasury.gov/news/press-releases/jy0292.  Other non-governmental organizations, such as Human Rights Watch, have cataloged arbitrary arrests, torture, and enforced disappearances carried out by Syrian Military Intelligence in Damascus prisons like the one in which Mr. Mihsen was held.  *See* Human Rights Watch, Torture Archipelago (July 2, 2012), https://www.hrw.org/report/2012/07/03/torture-archipelago/arbitrary-arrests-torture-and-enforced-disappearances-syrias.

16. Mr. Mihsen's imprisonment at these Military Intelligence facilities was brutal and harrowing.  He was held in a cramped and unsanitary cell for months at a time, without access to adequate food, water, or sanitary facilities.  He was removed from his cell only to be interrogated and tortured, which often took place on a daily basis.

17. Mr. Mihsen's interrogators often blindfolded him and forced him into an interrogation room. While there, he was tied up, sometimes suspended from a wall, questioned, and tortured for hours at a time. Frequent methods of torture included beatings with fists, boots, and rubber sticks, kicking, and electrocution. The beatings were designed to be both painful and humiliating: Mr. Mihsen's interrogators frequently stripped him to his underwear before mocking him, beating him and putting out cigarettes on his body or genitals. They also attached electric cables to his genitals and electrocuted him repeatedly. It was common for them to continue beating him until he passed out. When he did pass out, his captors poured water over his head to wake him up for more abuse.

18. Mr. Mihsen's interrogators frequently accused him of being a CIA operative and asked him questions about why he was present in Syria as a U.S. citizen. Syrian and Iranian officials also asked questions about his pilot's license and accused him of planning to steal aircraft in Syria. None of this was true. He was in Syria to visit his mother. When he denied their accusations, they threatened him with further beatings and death. Officials also forced Mr. Mihsen to withdraw funds from his credit card in the United States to pay purported "fines."

19. Mr. Mihsen's torturers were both Syrian and Iranian. The Iranians often spoke in Farsi in a manner used in Iran. Sometimes they spoke only in Farsi, and the Syrian interrogators would provide translation. The Iranian government interrogators also typically asked more detailed and sophisticated questions about Mr. Mihsen's ties to the United States, including questions about his purported work with the United States government. These interrogation and torture sessions occurred in a highly secure prison and members of the general public are prohibited from entering the buildings, let alone being present for interrogation and torture. On information and belief, these questioners were Iranian government agents working at the direction of Defendant Iran in concert with the Syrian government.

20. In 2012, Mr. Mihsen was falsely charged with conspiring with American intelligence agents to steal military aircraft in northern Syria. He was then held captive and tortured for over two more years based on those false charges.

21. By order of General Kifah Moulhem, a high ranking Syrian Military Intelligence official who would later become head of Syrian Military Intelligence,[2] Mr. Mihsen was forcibly transferred to a jail in Lattakia, in northern Syria. Conditions in the Lattakia prison were crowded and unsanitary. Because there was no heat or air conditioning, the prison was freezing in the winter and unbearably hot in the summer. Throughout his years in this prison, Mr. Mihsen was also repeatedly held in solitary confinement for days at a time.

22. While incarcerated at the Lattakia prison, Mr. Mihsen also continued to be regularly moved against his will to Syrian Intelligence facilities, where he was further detained for months of interrogation and torture. These interrogations were held at Syrian Intelligence Headquarters in Damascus and the Al-Balloona military prison in Homs, Syria, which had a similar reputation for torture and for the disappearances of prisoners.

23. At the Lattakia prison, the prisoners were sometimes shown television propaganda produced by the Syrian government. One of these programs was a broadcast showing the faces of purported U.S. agents who had been killed in Syria. Mr. Mihsen's face was among those on the broadcast.

24. In November of 2015, the Syrian government imposed new charges of kidnapping against Mr. Mihsen, which were used to justify his continued imprisonment. Mr. Mihsen never met the individual that he was charged with kidnapping and the charges were false.

---

[2] Mr. Moulhem has been specifically sanctioned by the United States Department of State for his actions under the Assad regime. *See* Press Release, U.S. Dep't of Treas., Treasury Sanctions Syrian Regime Prisons, Officials, and Syrian Armed Group (July 28, 2021), https://home.treasury.gov/news/press-releases/jy0292.

25. Mr. Mihsen was then forced to participate in a show trial in a military court, presided over by Syrian General Mamdoh Taha. Iranian officials sat alongside the Syrian military judge during the trial in this court. The sham trial provided no due process and evidentiary rules were not followed. Mr. Mihsen was predictably convicted and sentenced to fifteen years in prison and to pay a fine.

26. For the next nine years, Mr. Mihsen was imprisoned in Tartus, Syria. As with the prisons where he was previously held, the prison had horrible living conditions, including limited access to food and basic sanitation, exposure to heat and cold, and frequent use of solitary confinement without any basis.

27. Finally, Mr. Mihsen was able to contact representatives of the U.S. Embassy in Jordan with help from the American Red Cross. In 2024, after receiving support from the Red Cross and the U.S. Embassy, the charges against Mr. Mihsen were dropped. He was then informed that he would not be released until he could be released if his family paid a fine. He was able to obtain this amount with help from the Red Cross and the Embassy. On September 29, 2024, he escaped from Syria.

28. Mr. Mihsen travelled to the Embassy of the Czech Republic in Damascus, where he requested help obtaining a new U.S. passport to return home. He was provided a new passport by the U.S. Embassy in Amman, Jordan. Mr. Mihsen then traveled through Lebanon and Doha before finally returning to the United States.

### B.  Harm Sustained

29. As described above, Mr. Mihsen suffered repeated torture and physical and mental abuse over fifteen years at the hands of Syria and Iran. The physical assaults, threats, and unconscionable

conditions resulted in serious physical and mental injuries, including lasting pain, memory loss, and frightening nightmares that continue to plague him to this day.

30. During his absence, Mr. Mihsen's house in Texas was foreclosed upon. His former business, as a security provider, no longer exists. Still more painful are the personal connections that were lost over his fifteen years away. Mr. Mihsen lost touch with loved ones, as he missed birthdays, funerals, and day-to-day contact with the people he cares about.

31. Mr. Mihsen's physical condition has also deteriorated as a result of his treatment in Syria. He continues to suffer the physical and psychological effects of the beatings and torture in his day to day life, and will experience those effects until the day he dies.

## COUNT I

**PERSONAL INJURIES CAUSED BY TORTURE UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT, 28 U.S.C. § 1605A**
*(Against all Defendants)*

32. Paragraphs 1 through 31 above are incorporated as if set forth herein.

33. Under 28 U.S.C. § 1605A, Mr. Mihsen has a private, federal right of action against Defendants Syria and Iran for committing acts of torture against him.

34. This claim under 28 U.S.C. § 1605A meets the four statutory elements:

(a) As of the time of this filing, both Syria and Iran were designated state sponsors of terrorism by the U.S. Secretary of State.[3]

(b) Mr. Mihsen was a U.S. citizens at the time of his imprisonment and torture and was therefore a national of the United States;

(c) Syria and Iran have been afforded a reasonable opportunity to arbitrate the claim. Simultaneously with the filing of the pleadings and the service of the Complaint, Plaintiff is providing Syria and Iran an Offer to Arbitrate the claim; and

(d) Plaintiff's allegations amount to "an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act

---

[3] *See* U.S. Dept. of State, State Sponsors of Terrorism. Available at https://www.state.gov/state-sponsors-of-terrorism/.

if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."

35. The definition of "torture" under Section 1605A, which is derived from Section 3(b) of the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (Mar. 12, 1991, codified at 28 U.S.C. § 1350 (note)), includes:

> Any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind.

36. Defendants Syria and Iran, by and through their agents, intentionally subjected Mr. Mihsen to fifteen years of torture, severe pain and suffering, inhumane confinement, and physical and mental abuse, all with the intent of obtaining a false confession and extracting information from Mr. Mihsen. These actions constitute torture as defined under the FSIA and TVPA.

37. Defendants intentionally caused Mr. Mihsen to suffer extreme mental and physical anguish and pain.

38. Mr. Mihsen continues to suffer physical and psychological harm from the abuse inflicted by Defendants. He is permanently impaired as a result of the beatings he endured, and his body shows multiple scars from the burns and other injuries suffered. He also suffers from memory loss and other cognitive issues, which he believes were caused by the frequent blows to the head during beatings by Syrian and Iranian officials. Mr. Mihsen also suffers from significant emotional distress as a result of his experiences.

## COUNT II

**(§ 1605A(c) CAUSE OF ACTION – ASSAULT AND BATTERY)**
*(Against all Defendants)*

39. Plaintiff re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

40. Defendants Syria and Iran, by and through their agents, tortured and physically assaulted Mr. Mihsen and took actions intended to make Mr. Mihsen believe he would be physically harmed or killed. Defendants also intended harmful or offensive contact with Mr. Mihsen without his consent. Defendants' conduct included intentionally and repeatedly threatening Mr. Mihsen with bodily injury, and physically attacking Mr. Mihsen.

41. As described in the foregoing allegations, the officials, agents and employees of Syria and Iran, acting within the scope of their office, employment, or agency, caused Mr. Mihsen to suffer extreme mental and physical anguish and pain.

42. Mr. Mihsen continues to suffer physical and psychological harm from the abuse inflicted by Defendants.

43. Defendants Syria and Iran are therefore jointly and severally liable to Mr. Mihsen for the full amount of his damages, in such sum as they may be hereinafter determined.

## COUNT III

**(§ 1605A(c) CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**
*(Against all Defendants)*

44. Plaintiff re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

45. Defendants' imprisonment and torture of Mr. Mihsen, as described in the foregoing allegations, violated acceptable norms of treatment under both U.S. and international law and was

intentional and reckless, extreme and outrageous. As fully described in the foregoing allegations, Syria and Iran threatened Mr. Mihsen with bodily harm, physically abused and tortured him, and subjected him to inhumane living conditions and psychological trauma.

46. As described in the foregoing allegations, the officials, agents, and employees of Syria and Iran, within the scope of their office, employment, or agency, working together, caused Mr. Mihsen to suffer extreme mental and physical anguish and pain.  The sham trial involving both Syrian and Iranian officials caused extreme emotional distress, as did the imposition and service of the resulting sentence.

47. Mr. Mihsen continues to suffer physical and psychological harm to this day as a result of the treatment he received while in the custody of Defendants.

48. Defendants Syria and Iran are therefore jointly and severally liable to Mr. Mihsen for the full amount of his damages, in such sum as they may be hereinafter determined.

## COUNT IV

**(§ 1605A(c) CAUSE OF ACTION – FALSE IMPRISONMENT)**
*(Against all Defendants)*

49. Plaintiff re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

50.  Defendants Syria and Iran, by and through their agents deprived Mr. Mihsen of liberty without cause and without legal justification.

51. Defendants held Mr. Mihsen in detention even though there was no basis to do so.

52. As described in the foregoing allegations, the officials, agents and employees of Syria and Iran, acting within the scope of their office, employment, or agency, caused Mr. Mihsen to suffer extreme mental and physical anguish and pain.

53. Mr. Mihsen continues to suffer physical and psychological harm to this day as a result of the treatment he received while in the custody of the Defendants.

54. Defendants Syria and Iran are therefore jointly and severally liable to Mr. Mihsen for the full amount of his damages, in such sum as they may be hereinafter determined.

## COUNT V

### (§ 1605A(c) CAUSE OF ACTION – PUNITIVE DAMAGES)
*(Against all Defendants)*

55. Plaintiff re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

56. Defendants' conduct was criminal in nature, deliberate, willful, wanton, malicious, and in violation of fundamental norms of international law protecting human rights and civilians in conflict.

57. Under 28 U.S.C. § 1605A(c), an award of punitive damages should be imposed against both Defendants in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment against Defendants The Syrian Arab Republic and The Islamic Republic of Iran in favor of Plaintiff for compensatory damages, including for economic damages, solatium, pain and suffering.

B. Award reasonable attorney's fees and costs, including expert fees and interest.

C. Provide any other further relief the Court deems just and proper.

Dated: May 15, 2025                                   Respectfully submitted,

                                                           /s/ *Kirby D. Behre*
                                                           Kirby D. Behre (D.C. Bar # 398461)
                                                           Bradley Markano (D.C. Bar #88830461)
                                                           Cody Marden (D.C. Bar #1631944)
                                                           Miller & Chevalier Chartered
                                                           900 16th Street, NW
                                                           Washington, D.C. 20006
                                                           Tel:     (202) 626-5800
                                                           Fax:    (202) 626-5801
                                                           Email: kbehre@milchev.com
                                                           Email: bmarkano@milchev.com
                                                           Email: cmarden@milchev.com

                                                           *Counsel for Plaintiff*